UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Yufan Zhang,

    Plaintiff,

v.

UnitedHealth Group and
Sujatha Duraimanickam,

    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 18-1454 (MJD/KMM)

---

    Kaitlyn L. Dennis, Gustafson Gluek PLLC, Counsel for Plaintiff.

    Sandra L. Jezierski and Jeremy D. Robb, Nilan Johnson Lewis PA, Counsel for Defendants.

---

This matter is before the Court on Defendants' motion to compel arbitration or in the alternative, to dismiss Plaintiff's claims.

**I.    Background**

Plaintiff was an employee of Defendant UnitedHealth Group ("UnitedHealth") from December 2014 through November 14, 2016. (Amended Complaint ¶¶ 3, 11.) In 2016, he was a senior developer and reported to Defendant Sujatha Duraimanickam. (Id.) Plaintiff alleges that during the time

1

Duraimanickam was his supervisor, she repeatedly made remarks that Plaintiff was less capable of performing the work of developer compared to his younger coworkers and pressured Plaintiff to resign his position. (Id.) When he failed to resign, Plaintiff alleges that Duraimanickam: 1) restricted his access to important developer resources after younger developers were hired; 2) assigned him complicated and lengthy projects with unrealistic deadlines; 3) claimed Plaintiff lacked the requisite skills for his job, even though he worked in a web development environment that he created and developed the training material for; and 4) exaggerated mistakes to make them look like major issues. (Id. ¶ 3.) It is Plaintiff's claim that Duraimanickam set him up for failure as rationale for terminating his employment. (Id.)

Plaintiff claims all other members of Duraimanickam's team were treated differently than Plaintiff. (Id. ¶ 4.) He claims they were all provided the resources they needed to complete their work and were given adequate time and flexible deadlines to complete projects. (Id.)

Plaintiff pursued dispute resolution regarding his claims against Duraimanickam within UnitedHealth. Plaintiff claims that human resources

failed to adequately investigate his claims and adopted Duraimanickam's biased assessment of Plaintiff.  (Id. ¶ 5.)

In his May 2017 charge filed with the Minnesota Department of Human Rights ("MDHR"), which was cross-filed with the EEOC, Plaintiff claimed he was discriminated against based on age.  (Robb Decl. Ex. 1.)  He claimed he "was treated differently and less favorably than my younger coworkers.  My supervisor made unfavorable comments about my age.  I was subjected to constant discipline and I was discharged on November 14, 2016." (Id.)  He further claimed, "It is my belief I was discriminated against on the basis of my age/56 in violation of the Age Discrimination in Employment Act of 1967, as amended."  (Id.)

By notice dated February 27, 2018, the EEOC issued a Notice of Right To Sue.  (Id.)  Plaintiff's original *pro se* complaint was filed on May 25, 2018[1], and an Amended Complaint was filed on August 13, 2018.  In the Amended Complaint, Plaintiff has asserted claims of age discrimination under the ADEA and the MHRA and a claim of defamation.

---

[1] After commencing this action, Plaintiff was provided an attorney through the Court's Pro Se Project.

## II. Motion to Compel Arbitration

UnitedHealth asserts that immediately before Plaintiff was hired, he was sent an offer letter and UnitedHealth's Employment Arbitration Policy ("Policy"). (Duraimanickam Decl., Ex. 2.) The offer letter specifically provides "Your agreement to be bound by the terms of the Policy is a condition of your employment. Once you are on board, you will be required to electronically acknowledge in Employee Self Service your understanding of the Policy." (Id. Ex. 1 at p. 5.)

The Policy requires UnitedHealth employees to arbitrate any dispute that "arises from or relates to employment, including termination of employment." (Id. Ex. 2, Section B.) The Policy further provides that it applies to ADEA claims, state discrimination claims and defamation claims. (Id.)

### A. Standard

The Federal Arbitration Act ("FAA") provides that any agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds that exist in law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further instructs, in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in

writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…

9 U.S.C. § 3.

In considering a motion to compel arbitration, the Court must first determine whether there is a valid agreement to arbitrate. <u>Keymer v. Management Recruiters Int'l, Inc.</u>, 169 F.3d 501, 504 (8th Cir. 1999). The Court must then determine whether the parties committed to submit the subject matter of the dispute to arbitration. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985); <u>Keymer,</u> 169 F.3d at 504. In determining whether the parties have agreed to arbitrate, state law contract principles apply, in accordance with the general policies governing arbitration agreements. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).

### B. Whether Plaintiff's Claims Fall Within Scope of the Policy

The Policy covers "any dispute between an employee and United Health Group and any dispute between an employee . . . where the dispute arises from or relates to employment, including termination of employment, with UnitedHealth Group." (Duraimanickam Decl. Ex. 2.) In his Complaint, Plaintiff

alleges that UnitedHealth engaged in employment related age discrimination under the ADEA and the MHRA and that his supervisor defamed him. Because these claims arise from and relate to his employment, it is clear the Policy explicitly covers such claims.

C. **Whether There Is a Valid Arbitration Agreement**

Under Minnesota law, a contract is formed when: 1) there is a definite offer; 2) acceptance of the offer; and 3) consideration. Thomas B. Olson & Assoc., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). UnitedHealth argues that the Policy meets these requirements.

The Policy is a written offer by UnitedHealth to arbitrate disputes that arise from or relate to employment with or termination from UnitedHealth, and by accepting the offer of employment, Plaintiff accepted the offer to arbitrate employment disputes and his continued employment was consideration for such offer. The offer letter and the Policy clearly stated that acceptance of employment and continuation of employment would be deemed to be acceptance of the agreement to arbitrate. In addition, the Policy was sent along with the offer letter, giving Plaintiff the opportunity to review its terms prior to

accepting the offer of employment. The Court thus finds a contract was formed when Plaintiff began his employment with UnitedHealth.

Plaintiff argues the Policy is nonetheless invalid for a number of reasons.

### 1. Whether Unilateral Modification Provision Renders Policy Illusory.

First, Plaintiff asserts the Policy is an illusory contract that was unenforceable at its inception because, by its terms, it reserved to UnitedHealth the right to unilaterally modify or terminate the Policy. Section D of the Policy provides:

> UnitedHealth reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy. Notice may be effected by the posting of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive for Human Capital.

(Duraimanickam Decl. Ex. 2, Section D.) The Policy further provides that "All arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Legal Department receives the Demand for Arbitration, except that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim." (Id., Ex. 2, Section E.)

7

Plaintiff argues that Minnesota law recognizes the common law principle that when a purported contract allows a party to act in its discretion – and do whatever it wants to do – the contract may be deemed illusory. See Grouse v. Group Health Plan, Inc., 306 N.W.2d 114, 116 (Minn. 1981) (finding that no contract existed because "due to the bilateral power of termination neither party is committed to performance and the promises are, therefore, illusory.")

In support of this argument, Plaintiff cites to decisions from other jurisdictions that have held an arbitration agreement was illusory where the employer retained the right to amend, modify or terminate the agreement at any time, without providing any such change to the agreement would be prospective only. Morrison v. Amway Corp., 517 F.3d 248, 255 (5th Cir. 2008) (citing J.M. Davidson Inc. v. Webster, 128 S.W.3d 223 (Tex. 2003) (applying Texas law)). The Morrison case addressed whether Amway could enforce an arbitration agreement that was added to the Rules of Conduct after the dispute arose. The court found that under Texas law, because the arbitration agreement did not specify that it applied to prospective claims only, "the arbitration agreement was illusory and unenforceable . . . as applied to the claims asserted in the instant

suit." Id. at 257. This case is therefore distinguishable from Morrison as Plaintiff agreed to the Policy when he accepted UnitedHealth's offer of employment.

Plaintiff also cites to Harris v. TAP Worldwide, LLC, which found that under California law, "[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." 248 Cal. App. 4th 373, 385 (2016). Ultimately, however, the court in Harris found the arbitration agreement was not illusory because it contained "highly specific language which sharply limits the authority [of the employer] to modify the arbitration agreement." Id. at 386. Specifically, any modifications to the agreement had to be in writing, with 30 days' notice and would be subject to future disputes or claims only. Id.

Under Minnesota law, courts have permitted unilateral modifications to employment contracts. See, e.g., Rasschaert v. Frontier Commc'ns Corp., No. 12-3108 (DWF/JSM), 2013 WL 1149549 at *6 (D. Minn. Mar. 19, 2013) (citing Roberts v. Brunswick Corp., 783 N.W.2d 226, 232-33 (Minn. Ct. App. 2010) (finding that if a unilateral contract existed, the employer effectively modified it; the employee handbook provided the employer could amend its policies, the employer notified the employees of the change and the employees accepted the modifications by

9

continuing to work for employer); see also Pershern v. Fiatallis N. Am., Inc., 834 F.2d 136, 138 (8th Cir. 1987) ("Under Minnesota law, at-will employment contracts may be modified or replaced by unilateral agreements made according to standard contract law principles after employment has begun.")

In addition, under Minnesota law, the covenant of good faith and fair dealing is implied in arbitration agreements. In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). Federal courts have, for example, applied this principle in cases involving a consumer arbitration agreement, Ikechi v. Verizon Wireless, No. 10-4554 (JNE/SER), 2012 WL 3079254, at * 7 (D. Minn. July 6, 2012), and contracts involving the sale of residential mortgages. Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910, 917-18 (8th Cir. 2013); but see Hunt v. IBM Mid America Employees Fed. Credit Union, 384 N.W.2d 853 (Minn. 1986) (declining to read an implied covenant of good faith and fair dealing in employment contracts, for fear that to do so would subject every termination decision to judicial incursion.)

While there is no decision on point applying Minnesota law, there is substantial authority finding that where the contractual authority to amend an arbitration agreement is limited, such as requiring advance notice of such

changes or that any change would only apply to future disputes or claims, the agreement was not illusory.  See, e.g., Serafin v. Balco Props. Ltd., LLC, 235 Cal. App. 4th 165, 176 (2015) (finding that an arbitration agreement was not illusory because California law prevents a party from exercising a discretionary power in bad faith or in a way that deprives the other party of the benefits of the agreement); Stern v. HRB Digital, LLC, 2013 WL 12145014, at *4 (W.D. Mo. Aug. 12, 2013) (applying Missouri law, finding that if right to amend is restricted, such as requiring notice to the other party, then the contract is not illusory); Gergeni v. Evangelical Lutheran Good Samaritan Society, No. 17-cv-4037, 2018 WL 1175228 (N.D. Iowa Mar. 6, 2018) (finding that unilateral modification provision in arbitration agreement did not render agreement substantively unconscionable because the provision required notice and restricted the modification to prospective claims).

The Court finds that the Policy is not rendered invalid due to UnitedHealth's unilateral authority to modify that agreement.  As noted above, Minnesota law permits unilateral modifications to employment contracts, and has generally recognized an implied covenant of good faith in every contract.  In addition, the provision at issue limits UnitedHealth's ability to modify the terms

of the Policy; changes may only be made in writing, are effective on January 1 of any year, and upon 30 days-notice. (Duraimanickam Decl., Ex. 2 (Policy, Section D.) Further, the Policy expressly provides "that any amendments to the Policy made after a claim arises will not be applied to proceedings related to that claim." (Id., Section E.)

### 2. Whether Policy Terms are Procedurally or Substantively Unconscionable.

Under Minnesota law, "a contract is unconscionable if no clear-thinking person would make it, or if no such person would accept it." Wold v. Dell Fin. Servs., 598 F. Supp.2d 984, 988 (D. Minn. 2009). "In assessing whether an agreement is unconscionable, the Court must consider all of the facts and circumstances as whole." LeMaire v. Beverly Enterprises MN, LLC, 2013 WL 104919, *4 (D. Minn. Jan. 9, 2013) (quoting Pickerign v. Pasco Mktg., Inc., 228 N.W.2d 562, 565 (Minn. 1975)). Challenges to arbitration clauses on unconscionability grounds are routinely rejected by the courts. Richert v. Nat'l Arb. Forum, LLC, No. 09-763 ADM/JJK, 2009 WL 3297565, at *13 (D. Minn. Oct. 13, 2009) (citing Siebert v. Amateur Athletic Union of the United States, Inc., 422 F. Supp.2d 1033, 1041-44 (D. Minn. 2006) and Hunt v. Up North Plastics, Inc., 980 F. Supp. 1046, 1050-51 (D. Minn. 1997)).

Plaintiff argues that the Policy is not valid because it is both procedurally and substantively unconscionable. Plaintiff first argues that when he was provided the offer of employment together with the Policy, the parties were in an unequal bargaining position because Plaintiff had no ability to negotiate the Policy's terms. Plaintiff argues that Minnesota courts direct that such contracts should be subjected to special scrutiny. See Gooden v. Vill. Green Mgmt. Co., No. 02-835 (JRT/SRN), 2002 WL 31557689, at *3 (D. Minn. Nov. 15, 2002).

The Court finds this argument to be without merit. First, the Supreme Court has held that mere inequality in bargaining power is not a sufficient basis to hold an arbitration agreement unenforceable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Next, Plaintiff has failed to show that prior to accepting employment, he was not given the ability to consult with an attorney or to negotiate different terms. See Baker v. Science Applications Intern. Corp., No 07-25-6, 2008 WL 1723477, at *1 (8th Cir. Ap. 15, 2008) (noting plaintiff had the arbitration agreement for 23 days before signing it, during which time he could have consulted with an attorney, negotiate new terms or seek other employment). The record demonstrates that Plaintiff was provided the offer letter and Policy on December 22, 2014, and that Plaintiff electronically signed

13

the Policy on January 12, 2015. (Duraimanickam Decl. ¶¶ 2 and 3, Exs. 1 and 2.) Plaintiff thus had 21 days during which he could have consulted with an attorney or sought different employment before accepting UnitedHealth's offer.

Plaintiff next argues that the Policy is procedurally unconscionable because UnitedHealth failed to provide Plaintiff with the rules that would govern arbitration. The Policy incorporates by reference the AAA Rules, but UnitedHealth never provided Plaintiff with a copy of said rules, or even a link to the rules. It is Plaintiff's position that failure to provide a copy of the arbitration rules to which the employee will be bound supports a finding of procedural unconscionability. See Reyes v. United Healthcare Serv., Inc., 2014 WL 3926813, at *3 (C.D. Cal. Aug. 11, 2014) (pursuant to California law, the court found that arbitration policy was procedurally unconscionable where employer-imposed agreement on employees as a condition of employment with no opportunity to negotiate and because employer failed to provide a copy of the arbitration rules to employee). The cases cited by Plaintiff in support of this particular claim are not persuasive, nor binding on this Court as they are based on California state law.

Minnesota law requires the Court to consider all of the facts and circumstances when deciding whether a contract is unconscionable, and in doing so, the Court finds the mere failure to provide Plaintiff a copy of the AAA Rules does not render the agreement one where no clear-thinking person would accept it. <u>Wold</u>, 598 F. Supp.2d at 988. The AAA Rules are readily available online, and Plaintiff has not demonstrated that he asked for a copy of the rules and UnitedHealth denied him access to the rules. Accordingly, failure to provide Plaintiff a copy of the AAA Rules does not render the Policy procedurally unconscionable.

Plaintiff further argues that the Policy includes two provisions that are substantively unconscionable: 1) the provision allowing UnitedHealth to unilaterally modify the Policy; and 2) the provisions that sharply limit the discovery to which Plaintiff would be entitled. The Court rejects the claim that the provision allowing UnitedHealth to unilaterally modify the Policy is substantively unconscionable for the same reasons such provision does not render the Policy illusory.

As to the claims regarding discovery, whether an arbitration agreement is unconscionable due to limited discovery is a question for the arbitrator. <u>Siebert</u>,

422 F. Supp. 2d at 1043 (finding it was proper to allow arbitrator to decide in the first instance the validity of provisions in arbitration agreement regarding the limiting of discovery, waiving punitive damages, unilateral modification of agreement and forum selection clause) (citing Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 682 (8th Cir. 2001)); Atcas v. Credit Clearing Corp. of Am., 197 N.W.2d 448, 452 (Minn. 1972) (finding issue of arbitrability is to be first determined by arbitrator).

In this case, the Policy provides the arbitrator "the authority to resolve all issues concerning discovery that may arise between the parties. In addition, the arbitrator shall have the authority to issue subpoenas for the appearance of witnesses or the production of documents pursuant to applicable law." (Duraimanickam Decl., Ex. 2 (Policy, Section C (14)(e)).) Because this provision makes clear the parties agreed that the arbitrator would have the authority to determine discovery issues, whether the limitations on discovery renders the agreement unconscionable should be decided in the first instance by the arbitrator.

Based on the above, the Court will grant UnitedHealth's motion to compel arbitration.

**IT IS HEREBY ORDERED** that Defendant UnitedHealth's Motion to Compel Arbitration [Doc. No. 16] is GRANTED, and this action is STAYED pending arbitration.

Date:  February 13, 2019

/s Michael J. Davis_____
Michael J. Davis
United States District Court
