UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Yufan Zhang,<br><br>                    Plaintiff,<br><br>v.<br><br>UnitedHealth Group and Sujatha Duraimanickam,<br><br>                    Defendants. | Civil Case No. 18-cv-01454-MJD-KMM<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ARBITRATOR'S DECISION** |

## INTRODUCTION

Arbitration awards are not to be vacated except in extraordinary circumstances, none of which exist here. Plaintiff Yufan Zhang's ("Zhang") memorandum in support of his motion to vacate is devoted primarily to a recitation of evidence on matters and arguments that were submitted to Arbitrator Jeffrey Keyes during the four-day arbitration of this matter. While it is clear that Zhang disagrees with Arbitrator Keyes's decision, his disagreement cannot be the basis for vacatur and his arguments on the merits are not properly before the Court. Moreover, even if the Court were to consider Zhang's arguments, his motion fails. The evidence at the arbitration supported the award, and there is no evidence of misconduct or other circumstances sufficient to set it aside. Defendants UnitedHealth Group, Inc. ("UnitedHealth") and Sujatha Duraimanickam respectfully request Zhang's motion be denied.[1]

---

[1] Defendants anticipate filing a cross-motion to confirm Arbitrator Keyes's award in the near future.

4818-3236-4246

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Zhang is a former UnitedHealth employee who was terminated for poor performance in November 2016. Zhang first commenced this action *pro se* on May 15, 2018. [ECF No. 1.] In his initial Complaint, Zhang alleged that he was unlawfully terminated due to age and that false statements had been made about him. (*Id.*) The Court referred Zhang to the FBA *Pro Se* Project, and attorneys from Gustafson Gluek PLLC agreed to the representation. [ECF Nos. 2-4.]

On August 13, 2018, Zhang filed his First Amended Complaint, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Minnesota Human Rights Act ("MHRA"). [ECF No. 7.] Zhang also asserted a claim for defamation based on statements Defendant Duraimanickam made about Zhang in her supervisory capacity.[2] (*See id.*) On February 14, 2019, this Court granted Defendants' Motion to Compel Arbitration, finding that Zhang entered into a valid, enforceable agreement to arbitrate employment claims under UnitedHealth's Arbitration Policy ("Policy"). [ECF No. 28.] In its Order, the Court explicitly acknowledged "that the arbitrator would have the authority to determine discovery issues," including questions related to the limitations on discovery contained in the Arbitration Policy. (*See id.* at 16.)

The parties proceeded to litigate Zhang's claims according to the Rules of the American Arbitration Association ("AAA"), as modified by the Policy. (Declaration of Sandra Jezierski, ("Jezierski Decl."), ¶2.) The parties were entitled to serve up to 25

---

[2] Zhang initially brought all claims against both Defendants. [*See* ECF No. 7.] He later voluntarily dismissed the ADEA and MHRA claims brought against Duraimanickam, leaving only the defamation claim against her. [*See* ECF No. 14.]

2

4818-3236-4246

Requests for the Production of Documents on one another and conduct two eight-hour days of fact witness depositions.³ (*Id.*, Ex. A, ¶¶14.b and 14.c.) In addition to taking multiple depositions, Plaintiff served—and Defendants responded to—21 Requests for Production of Documents. (*Id.* ¶3.) No discovery disputes came before former Magistrate Judge and Arbitrator Jeffrey Keyes. (*Id.*)

Arbitrator Keyes heard testimony over a four-day period on August 4, 5, 18, and 19, 2020.⁴ (*Id.* ¶5.) During the hearing, the facts were hotly contested. As illustrated by Defendants' post-hearing submissions, (*Id.*, ¶9, Ex. C), Arbitrator Keyes heard testimony that:

- Zhang suffered from performance issues from the onset of his employment;

- Zhang's first supervisor coached him on his performance and gave him a score of "Needs Improvement" in at least one area of his first annual review;

- Defendant Duraimanickam began supervising Zhang shortly after he completed his first year with UnitedHealth;

---

³ The Policy also called for one limited interrogatory, expert depositions, and physical and mental examinations consistent with Fed. R. Civ. P. 35. (Jezierski Decl., Ex. A, ¶¶14.a, 14.c, and 14.d.)

⁴ The hearing was initially scheduled for August 4 through 6, 2020. Zhang called nine fact witnesses before he began testifying on direct examination the morning of the second day. (*See id.*, ¶8, Ex. B, Arbitration Transcript ("Tr."), Vols. 1 and 2.) That afternoon, because of difficulties understanding Zhang's accent, Arbitrator Keyes ordered the hearing to stand in recess to allow Zhang to retain a Mandarin translator. (Tr. 320:17-323:11.) When the hearing resumed two weeks later, Zhang was allowed to repeat prior testimony to ensure a clear record, and his attorney was given latitude to ask leading questions to expedite the proceeding. (*Id.* at 332:19-333:14; 338:15-339:2.) Zhang's testimony occupied the entire third day of the hearing. (*Id.* Vol. 3.) Zhang rested his case the morning of the fourth day. (*Id.* Vol. 4.) Defendants called six witnesses before resting that afternoon. (*Id.*)

3

- Duraimanickam also observed performance issues within months of starting to supervise Zhang;

- Duraimanickam coached Zhang on his performance issues and provided feedback in an effort to help him improve;

- Zhang's co-workers communicated their own frustrations about Zhang's performance to Duraimanickam;

- UnitedHealth placed Zhang on a corrective action plan because of his poor performance;

- Zhang's performance did not improve despite being given concrete action items and meeting regularly with Duraimanickam;

- Zhang's shortcomings impacted the entire team and its reputation, including its reputation with client groups; and

- Zhang was terminated for poor performance.

The Policy provides that the arbitrator is to "follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in th[e] Policy." (*Id.*, Ex. A, ¶C.21.b.) The Policy further provides that the arbitrator shall issue a written, signed award, which is final and binding upon all parties. (*Id.*, ¶¶C.21.a, c.)

On October 5, 2020,[5] Arbitrator Keyes issued a reasoned written decision in favor of Defendants on all counts. (*Id.*, ¶10, Ex. D.) Arbitrator Keyes found that Defendants proved Zhang was not meeting UnitedHealth's performance expectations, and Zhang failed to meet his burden in proving pretext. (*Id.* at 2.) Arbitrator Keyes further found that the statements Zhang complained of were subject to a qualified privilege, which Zhang failed to bring evidence to overcome. (*Id.* at 4-5.)

Zhang was represented by counsel continuously from counsel's Notices of Appearance in this Court—through discovery, the hearing, and post-hearing briefing—until counsel's Motion for Withdrawal without Substitution was granted on November 18, 2020. [ECF No. 39.] Zhang now seeks vacatur.

Although the precise legal basis for Zhang's motion is difficult to discern, Zhang devotes the bulk of his 144-page memorandum[6] to a regurgitation of the facts from his perspective.[7] (*See generally* First Amended Memorandum in Support of Motion to Vacate Arbitration Awards ("Pl. Br."), ECF No. 56.) Throughout his memorandum,

---

[5] Arbitrator Keyes dated his decision October 5, 2020, but the Parties did not receive it until the following day. (Jezierski Decl., ¶10.)

[6] Zhang timely filed his initial Brief in Support of Motion to Vacate Arbitration Awards on January 6, 2021. [ECF No. 42.] That memorandum exceeded the word limit in L.R. 7.1 by over 1,000 words. (Jezierski Decl., ¶11.) The following day, Zhang asked for permission to file an amended brief, which Magistrate Judge Menendez granted. (*Id.*, ¶12, Ex. E.) Zhang filed his First Amended Memorandum in Support of Motion to Vacate Arbitration Awards on January 21, 2020. [ECF No. 56.] Zhang's First Amended Memorandum is over two-and-one-half times the word limit. (Jezierski Decl. ¶12.) Despite filing multiple memoranda, Zhang has not actually filed a <u>motion</u> to vacate the Award.

[7] Suffice it to say, Defendants vigorously dispute Zhang's depiction of both the underlying events and the record, as illustrated in Respondents' post-hearing submission. (*See id.*, Ex. C.)

5

Zhang claims that Defendants' failure to produce records from three project management databases caused Arbitrator Keyes to be confused and prevented Zhang from meeting his burden of proof. (*See, e.g.*, *id.* at 69, 140.) Zhang cites to both the Federal Arbitration Act ("FAA") and the Minnesota Uniform Arbitration Act ("MUAA") in his memorandum. (*See id.* at 81-82.)

## STANDARD OF REVIEW

A court's "scope of review of an arbitration award … is among the narrowest known to the law." *Bhd. of Maint. of Way Emps. v. Terminal R.R. Ass'n of St. Louis*, 307 F.3d 737, 739 (8th Cir. 2002). "Under the FAA,[8] courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)).

"Courts do not generally review the merits of arbitration awards, and neither serious legal nor factual errors typically permit a court to vacate an award 'so long as the arbitrator is even arguably … applying the contract.'" *Horton, Inc. v. NSK Corp., Inc.*, 544 F. Supp. 2d 817, 823 (D. Minn. 2008) (quoting *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004)). Therefore, an arbitrator's

---

[8] Zhang's motion is properly decided under the FAA, which governs judicial review of an arbitration award when the arbitration agreement contains no specific reference to application of a state arbitration act. *Riniker v. UnitedHealth Grp. Inc.*, No. 12-CV-2875 JNE/TNL, 2015 WL 1782566, at *3 (D. Minn. Apr. 20, 2015) (finding FAA to apply to UnitedHealth arbitration agreement); *see also UHC Mgmt. Co., Inc. v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (mandating application of the FAA unless the parties made it "abundantly clear" that the FAA would not apply to judicial review).

6

interpretation of the law, even if erroneous, "is not a valid justification for vacating an award." *Id.* at 824 (citation omitted).

The relevant FAA sections cited by Zhang allow vacatur only

(1) where the award was procured by corruption, fraud, or undue means …

[or]

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy[.]

9 U.S.C. § 10(a). "The burden is on the party requesting vacatur of the award to prove one of these … bases." *ATS Int'l, Inc. v. LAP Distribution PTE Ltd.*, No. CIV. 11-2207 MJD/LIB, 2012 WL 2884989, at *4 (D. Minn. June 26, 2012) (quotation omitted).

## ARGUMENT

### I. THE MERITS ARE NOT PROPERLY BEFORE THE COURT

Throughout his memorandum, Zhang repeatedly attacks Arbitrator Keyes's credibility determinations and the strength of the evidence presented at the hearing. But Zhang's arguments on the merits are not properly before this Court. *Oxford Health Plans*, 133 S. Ct. at 2069 ("The remainder of Oxford's argument addresses merely the merits:… We reject this argument because, only because, it is not properly addressed to a court… [C]onvincing a court of an arbitrator's error—even his grave error—is not enough."). There is no place for the Court to "accept[] evidence on matters and arguments that either were or could have been submitted to the arbitration panel." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 462 (8th Cir. 2001)). A "simpl[e] disagree[ment] with the arbitrator['s] analysis of the facts" is not grounds for vacating an award. *Id.*

Despite this clear law, Zhang argues *ad nauseam* that he was a strong performer, lauding his receipt of UnitedHealth's "Make IT Happen Award" in 2015[9] and citing to his colleagues' praise of his technical skills. (*See, e.g.*, Pl. Br. at 72-73.) He has submitted what he describes as "more than three boxes" of exhibits for the Court's consideration. (Jezierski Decl., ¶13, Ex. F.) This Motion is a not-so-transparent attempt to have the merits heard by this Court, but Zhang's allegations that the arbitrator made faulty credibility and factual determinations cannot be a basis for vacatur.

## II.     THE AWARD WAS NOT PROCURED BY CORRUPTION, FRAUD, OR UNDUE MEANS

Zhang appears to claim the Award should be vacated under §10(a)(1), (*see* Pl. Br. at 83-84), which provides for vacatur "where the award was procured by corruption, fraud, or undue means …." 9 U.S.C. §10(a)(1). In supporting his argument, Zhang repeatedly states that Defendants "refused to disclose" documents from project management databases "BaseCamp," "CodeHub," and "service-now," allegedly rendering Arbitrator Keyes (and the attorneys) confused and unable to understand the evidence. (*See, e.g.*, Pl. Br. at 18-20, 35-36, 40, 49-50, 69-70, 140.) Zhang also attacks Duraimanickam's and other witnesses' testimony, claiming they lied, were "unwilling to provide some key information," or gave "some misleading information."[10] (*Id.* at 69.)

---

[9] Zhang's suggestion that he personally won this award is curious, given the multiple witnesses who testified that he did not individually receive the award but that he was part of a team that won it. (*See, e.g.*, Tr. 25:4-24; 161:12-162:4; 743:18-744:2.)

[10] Zhang also claims Duraimanickam "gave the arbitrator a [sic] 'Illusion of Truth' by circular reasoning, or 'Repeat a lie often enough and it becomes the truth.'" (Pl. Br. at 97.)

These behaviors, he claims, led to an award procured by fraud. (*Id.* at 69.) Zhang falls far short of meeting the burden to support vacatur on this ground.

To prevail on a motion to vacate an arbitration award because of fraud, "the offended party [must] prove[] the fraud by clear and convincing evidence, show[] the fraud was not discoverable by due diligence before or during the proceeding, and show[] that the fraud was materially related to an arbitration issue." *MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499*, 345 F.3d 616, 622 (8th Cir. 2003). "[F]raud traditionally requires a false representation of material fact, made knowingly and with intent to deceive, which induces another party to act." *Wolfson v. Allianz Life Ins. Co. of N. Am.*, No. CIV. 14-4469 JNE/BRT, 2015 WL 2194813, at *6 (D. Minn. May 11, 2015). In the context of the FAA, though, more is required. *Id.* ("But given 'the strong federal policy favoring arbitration,' fraud under the FAA demands a 'greater level of improper conduct' than is typically required." (quoting *Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 996 (8th Cir. 2002)). Before an award can be vacated under §10(a)(1), the party seeking vacatur must demonstrate a causal connection between the improper conduct and the award. *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991-95 (8th Cir. 1999).

Zhang's attempt to vacate the award under §10(a)(1) fails because he has not demonstrated any of the requisite elements. He has not proved any intentional deception of material fact or any other improper conduct by Defendants or any witnesses. Nor has he pointed to any alleged wrongdoing that could "not have been discoverable by due diligence."

Primarily, Zhang claims Defendants failed to produce records that would disprove Duraimanickam's perception of his failures. Aside from the fact that the relevant inquiry is what Defendants in good faith *believed* regarding Zhang's performance (not whether or not they were correct), the state of the production record involved no deception or misrepresentation. Zhang was perfectly aware of the document requests he served, the documents produced (and not produced), and the documents he identified as exhibits for the hearing. If he felt information or documents were missing, he could have identified the missing documents and taken steps to procure them. Indeed, Zhang served at least one deficiency letter on Defendants during the course of discovery, but that letter lacked any reference to the information he now claims is essential to proving his claims.[11] (Jezierski Decl. ¶3.) Zhang also did not seek assistance from Arbitrator Keyes in obtaining the information, which he could have done at any point up to and including during the hearing.[12] (*Id.*, ¶4.)

Moreover, Defendants did not hide information from either Zhang or Arbitrator Keyes. Zhang questioned witnesses during the hearing about the information tracked in the databases, and Defendants did not object. (*See, e.g.*, Tr. 95:19-96:25; 98:15-20;

---

[11] Deficiency letters are commonplace in litigation and, in this case, the crux of the letter was the form of Defendants' objections. Defendants strongly object to Zhang's accusations that they wrongly concealed evidence because they believed the evidence would be unfavorable to them. (*See, e.g.*, Pl. Br. at 141.) Defendants are well-aware of their obligations to comply with discovery, which are no different in arbitration than if the parties had been litigating in court. Zhang has zero evidence of Defendants wrongfully withholding evidence.

[12] Contrary to Zhang's contention, both the Arbitration Policy and the AAA Rules granted Arbitrator Keyes the authority to rule on discovery disputes and order discovery. (*See* Jezierski Decl., Ex. A, ¶C.14.e; AAA Employment Rule 9.)

10

134:7-135:15; 669:6-670:19.) Zhang seems to think that Defendants had an affirmative duty to introduce evidence discussed during Zhang's case-in-chief, even in the absence of Zhang's request for the evidence to be either produced or admitted. But that is not how adversarial proceedings work. Zhang neither sought the information in discovery nor demanded it mid-hearing, even when the Arbitrator ordered a two-week continuance for other reasons. (Jezierski Decl., ¶¶3-6.) Zhang's failure to litigate his case is not improper conduct on the part of Defendants.

Zhang likewise complains about allegedly circular testimony by Duraimanickam. It should go without saying that the Arbitrator was capable of intervening if he found a witness's testimony difficult to follow or confusing. Indeed, that is precisely what the Arbitrator did when he could not understand Zhang's testimony.[13]

As to alleged "lies," Zhang does no more than make generalized statements without evidentiary support.[14] (*See, e.g.*, Pl. Br. at 69.) He certainly has not met his burden of showing—by clear and convincing evidence—that witnesses intentionally

---

[13] Zhang's testimony was difficult to follow both because of Zhang's strong accent and because Zhang repeatedly provided nonresponsive and rambling answers. (Jezierski Decl. ¶5.) During the early part of Zhang's testimony, Arbitrator Keyes and the Court Reporter regularly sought clarification on Zhang's answers. (*Id.*; *see, e.g.*, Tr. 288:1-6; 291:19-294:12.) The Arbitrator then directed Zhang's attorney to summarize Zhang's answers for the record. (*See, e.g.*, Tr. at 296:7-22; 297:15-21; 307:10-309:16.) Ultimately, Arbitrator Keyes ordered Zhang to obtain a translator. (*Id.* at 320:17-323:11.) Even when Zhang resumed testifying, Arbitrator Keyes gave Zhang's counsel wide latitude to lead, decipher, and summarize Zhang's testimony. (*See, e.g.*, Tr. 338:15-339:7; 345:17-346:20; 348:13-351:12; 364:1-366:25; 388:6-15.) He also allowed lengthy and nonresponsive answers, including over Defendants' objections. (*See, e.g.*, Tr. 395:18-398:8.) Arbitrator Keyes bent over backwards to provide Zhang a fair opportunity to be heard.

[14] Zhang appears to claim that Shawn Woods and Kim Myers gave misleading testimony, though he does not coherently explain what about their testimony would constitute fraud. (*See, e.g.*, Pl. Br. at 135-36.)

11

perjured themselves. Zhang has not demonstrated any of the circumstances to justify vacating the Arbitration Award under §10(a)(1).

### III.   ARBITRATOR KEYES HEARD ALL RELEVANT TESTIMONY AND PROVIDED ZHANG A FAIR HEARING

Zhang also appears to seek relief under §10(a)(3), which provides for vacatur "where the arbitrator[] [was] guilty of misconduct in refusing to postpone the hearing, … or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "A party seeking to vacate an award for misconduct under § 10(a)(3) must show that he was 'deprived of a fair hearing.'" *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014) (quoting *Grahams Serv. Inc. v. Teamsters Local 975*, 700 F.2d 420, 422 (8th Cir. 1982)).  Zhang has made no such showing.

As an initial matter, the requirement that an arbitrator "hear" evidence centers around the <u>exclusion</u> of evidence, not, as Zhang presumes, the arbitrator's <u>consideration</u> of evidence.  *See, e.g.*, *Grahams*, 700 F.2d 420; *see also Nat'l Post Office, Mailhandlers, Watchmen, Messengers and Grp. Leaders Div., Laborers Int'l Union of N. Am. v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985); *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985); *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594 (3d Cir. 1968).

Here, Zhang complains that Arbitrator Keyes did not give proper consideration to a document Zhang claimed was a compilation of contemporaneous notes regarding his work performance and meetings with Duraimanickam. (*See* Pl. Br. at 123-24; Tr. 491:21-

12

94:22.) Arbitrator Keyes admitted this document over Defendants' objection. (Tr. 315:16-320:16.) But in light of Zhang's either inability or refusal to show he recorded the notes contemporaneously with the events, Arbitrator Keyes wrote that the "compilation of notes does not constitute reliable evidence supporting the claim." (Jezierski Decl., Ex. D at 4.) The Arbitrator did not exclude or fail to consider the evidence; he just deemed it less credible than other evidence presented at the hearing.

The only other evidence Zhang claims should have been heard are the project management records from BaseCamp, CodeHub, and service-now. But Arbitrator Keyes did not exclude this evidence; Zhang never sought to introduce it. It is axiomatic that one cannot exclude evidence unless and until its admission is sought.

It is also manifest that one cannot wrongfully deny a postponement that is never sought. During the hearing, Zhang did not once request a continuance to permit him to obtain additional information or documents from Defendants, nor did he complain that he had inadequate time for his case-in-chief. Ordinarily, the failure to complain about alleged errors waives the claims. *See PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 995 (8th Cir. 1999) ("Zinsmeyer waived this contention by failing to raise it to the arbitrators." (citations omitted)). In his memorandum, however, Zhang claims that he raised these concerns via letter to Arbitrator Keyes on September 18, 2020. (*See* Pl. Br. at 105.) The letter, which does not appear to have been filed with the Court, was never provided to Defendants by either Zhang or his then-attorney, and it is unclear whether it was ever delivered to Arbitrator Keyes. (Jezierski Decl. ¶14.) In any event, the

13

claims were not raised during the proceeding. Zhang has therefore failed to show that he preserved these arguments.

Regardless, Zhang cannot credibly claim he was denied a fair hearing. Zhang's counsel called nearly all of Defendants' witnesses as adverse witnesses during Zhang's three-day case-in-chief, and he had "another bite at the apple" when he cross-examined them following Defendants' case-in-chief, which was put on in less than a day. (*See generally* Tr.)  Because of difficulties with Zhang's testimony, Zhang's counsel was also permitted to lead him and summarize his testimony in a manner that is well outside of typical procedures or the Rules of Evidence. Zhang had every opportunity to present his case and challenge Defendants during their case-in-chief.

Zhang has not met his burden of showing that Arbitrator Keyes engaged in misconduct to justify vacating the Award under the FAA.

## IV.     AN AWARD CANNOT BE VACATED ON THE GROUNDS THAT THE ARBITRATOR MISAPPLIED THE LAW

Zhang also claims that Arbitrator Keyes misapplied the law regarding the qualified privilege and defamation claims. (*See* Pl. Br. at 95-96, 103-04.) Although an arbitrator's manifest disregard for the law has been used to vacate awards in the past,[15] that test is no

---

[15] The now-defunct test for "manifest disregard" was very strict.

> Manifest disregard for the law may be found when arbitrators are shown to have been fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.  If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said that he was doing so because he thought the law unfair, that would be an instance of "manifest disregard."

14

longer available to parties seeking vacatur. *Air Line Pilots Ass'n Intern. v. Trans States Airlines, LLC*, 638 F.3d 572, 578-79 (8th Cir. 2011) (holding, in light of the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576 (2008), that courts can no longer vacate awards on the grounds that the arbitrators manifestly disregarded the law); *Paisley Park Enterprises, Inc. v. Boxill*, 371 F. Supp. 3d 578, 582 (D. Minn. 2019), *appeal dismissed*, No. 19-1941, 2020 WL 6375153 (8th Cir. Feb. 19, 2020). Zhang's argument that Arbitrator Keyes manifestly disregarded the law is not properly before the Court and, therefore, must be rejected.

## V. ARBITRATOR KEYES PROPERLY CONSIDERED THE EVIDENCE PRESENTED

As stated above, the merits of the Arbitration Award are not properly before the Court. But even if Zhang's arguments were considered, they would be insufficient to support vacating the Award. Arbitrator Keyes presided over this case pursuant to a valid arbitration agreement, and he issued a final and binding award.

The Arbitrator solicited pre-hearing memoranda, heard testimony over a four-day period, admitted nearly 100 exhibits, received post-hearing memoranda, and issued a reasoned, written decision analyzing the claims. (Jezierski Decl., ¶¶5, 7-10.) Arbitrator Keyes wrote that he based the award on "having duly heard the proofs and allegations at the hearings," (*Id.*, Ex. D at 1), and he referenced both the documentary evidence and witness testimony throughout the award. (*See generally id.*)

---

*Horton*, 544 F. Supp. 2d at 824 (internal citations, quotations, and quotation marks omitted).

15

Zhang challenges Arbitrator Keyes's ruling because Zhang believes he was a good performer, but Zhang's opinion of his own performance is irrelevant. All that matters is that UnitedHealth's reason for termination was nondiscriminatory, even if unwise or based on mistakes of fact. *See Riser v. Target Corp.*, 458 F.3d 817 (8th Cir. 2006) ("While [plaintiff] may have some concerns about [defendant]'s management style, he does not have a Title VII claim."); *see also Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002) ("The threshold question when considering pretext is whether [the employer's] reasons for its employment actions are true, not if they are wise, fair, or correct."); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.").

Moreover, the evidence does not support the rosy picture of Zhang's performance presented in his memorandum. While it is true some of Zhang's colleagues have said positive things about him, the evidence also showed that they felt he was inefficient and did not communicate or collaborate effectively. (*See, e.g.*, Tr. 185:19-186:2; 703:21-706:1; 710:10-14; 711:13-714:24; 720:12-721:12; 744:23-746:11.) As Zhang states: "In arbitration, there are two explanations for why [Zhang] was fired: [Defendants'] and [Zhang's]." (Pl. Br. at 16.) Arbitrator Keyes simply found Defendants' more credible. The FAA does not permit vacatur simply because one party disagrees with the findings.

16

## VI.     THE AWARD CANNOT BE VACATED UNDER THE MUAA

Zhang cites the MUAA as further grounds for vacating the Award. (Pl. Br. at 81.) The FAA—not the MUAA—applies to Zhang's motion. *Supra*, note 8. But even if the MUAA governed, Zhang's motion would fail.  "[T]he scope of judicial review of an arbitration award [under the MUAA] is extremely narrow." *State Office of State Auditor v. Minn. Ass'n of Prof'l Emps.*, 504 N.W.2d 751, 755 (Minn. 1993); *see also Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750 (Minn. 2014) ("In our review of an arbitrator's authority, '[e]very reasonable presumption is exercised in favor of the finality and validity of the award.'" (quoting *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn. 1984)).

The MUAA limits the grounds on which an award may be vacated to similar grounds as are found in the FAA. *See* Minn. Stat. § 572B.23(a).  Under the MUAA, "[a]n arbitration award 'will be set aside by the courts only when the objective party meets its burden of proof that the arbitrators have *clearly* exceeded the powers granted to them in the arbitration agreement; courts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits.'" *Seagate*, 854 N.W.2d at 760-61 (quoting *Childrens' Hosp., Inc. v. Minn. Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn. 1978) (emphasis in original)).

As with the FAA, "the only issue [in determining whether an arbitrator exceeded his powers] is whether the question decided by the arbitrator was within his authority to decide; [the courts] may not examine the underlying evidence and record, or otherwise delve into the merits of the award." *Liberty Mut. Ins. Co. v. Sankey*, 605 N.W.2d 411,

17

413-14 (Minn. Ct. App. 2000); *see also Seagate*, 854 N.W.2d at 767 ("In short, [the parties'] challenge, which is primarily about the arbitrator's refusal to use certain evidence in fashioning the final award, is outside the scope of [the MUAA].").

For the reasons already discussed, even under the MUAA, Zhang would not be entitled to vacatur of the arbitration award.

## CONCLUSION

Distilled to its essence, Zhang's argument amounts to a discovery grievance, that was never raised by Zhang during the course of this litigation, coupled with a disagreement about the weight of the evidence. These are not proper grounds for vacating an arbitration award. Zhang has failed to show that either Defendants or the Arbitrator acted improperly or engaged in misconduct sufficient to set aside the Award. Defendants UnitedHealth Group and Sujatha Duraimanickam therefore respectfully request Plaintiff's motion to vacate be denied.

NILAN JOHNSON LEWIS PA

Dated:  February 3, 2021

By:   *s/ Sarah B. Riskin*
Sandra L. Jezierski (Reg. No. 0267132)
Sarah B. Riskin (Reg. No. 0388870)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Phone:  612-305-7500
Fax:  612-305-7501
sjezierski@nilanjohnson.com
sriskin@nilanjohnson.com

ATTORNEYS FOR DEFENDANTS